# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CLEVELAND BAKERS AND TEAMSTERS HEALTH AND WELFARE FUND, | ) ) ) | Case No. 1:24-cv-664 |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) ) ) | Magistrate Judge James E. Grimes, Jr. |
| v. | ) ) | |
| PUBLICIS HEALTH, LLC, | ) ) | |
| Defendant. | ) ) ) | |

## OPINION AND ORDER

A third-party payor brings this putative class action against a marketing company whose clients include pharmaceutical companies that manufacture and sell opioids. The complaint asserts a claim under the Racketeer Influenced and Corrupt Organizations Act as well as State-law claims for violation of the Ohio Corrupt Practices Act, absolute public nuisance, and unjust enrichment. Defendant moves to dismiss. After the close of briefing on the motion to dismiss, the Ohio Supreme Court issued an opinion addressing how State law handles public nuisance actions like this one. Subsequently, Plaintiff moved to dismiss its public nuisance claim. For the reasons that follow, the Court **GRANTS** Plaintiff's unopposed motion to dismiss the public nuisance claim and **GRANTS** Defendant's motion to dismiss the remaining claims.

## STATEMENT OF FACTS

Plaintiff Cleveland Bakers and Teamsters Health and Welfare Fund is a multi-employer trust fund that provides health and welfare benefits to members of Bakers' Union Local No. 19 and Teamsters Local Union No. 507 in Northeast Ohio. (ECF No. 1, ¶ 40, PageID #14.) The Fund is a third-party payor: it indirectly purchases, pays for, or reimburses the costs of prescription drugs that are on its approved formularies. (*Id.*; *id.*, ¶¶ 92 & 114, PageID #33 & #41–42.) "Positive placement on Plaintiff's . . . formularies" results in "quicker and easier approval for a prescription's coverage." (*Id.*, ¶ 92, PageID #33.) To help inform its decisions regarding a drug's placement on its formularies, Plaintiff engages pharmacy benefit managers as its agents. (*Id.*, ¶¶ 91 & 114, PageID #32–33 & #41–42.)

Defendant Publicis Health, LLC is a healthcare marketing company that forms part of a consortium of entities under the umbrella of parent company Publicis Groupe. (*Id.*, ¶¶ 41 & 42, PageID #15.) In 2010, Purdue Pharma, L.P., a manufacturer of opioids, hired Publicis Health's predecessor to "design and implement marketing tactics" and "provide[] marketing plans, public relations advice, and analyses." (*Id.*, ¶¶ 13 & 46, PageID #7 & #16.) These plans included strategies to encourage prescribers to issue new prescriptions as well as to increase the dosages and lengths of therapy for existing users. (*Id.*, ¶¶ 71–74, 77, 79–81, 84–86 & 98–101, PageID #23–#30 & #35–37.) To gather information for their analyses, Publicis Health's employees accompanied Purdue Pharma sales representatives

2

during visits to doctors and observed the doctors' prescribing decisions. (*Id.*, ¶¶ 26 & 90, PageID #11 & #32.)

As public concern about opioid use mounted, Publicis Health strategized ways to portray Purdue Pharma and its products as safe and responsible, shifting blame for addiction onto individual patients. (*Id.*, ¶¶ 103–13, PageID #37–41.) In response to public policy efforts against opioid overprescription, Publicis Health advised Purdue Pharma to focus its marketing on prolific prescribers and prescribers at hospitals that did not allow sales representatives. (*Id.*, ¶¶ 115–21 & 127–35, PageID #42–44 & #47–53.) Other pharmaceutical companies also hired Publicis Health for similar work marketing their opioid products. (*Id.*, ¶¶ 149–87, PageID #58–69.)

On October 20, 2020, Purdue Pharma reached a plea agreement with the United States Department of Justice. (*Id.*, ¶ 145, PageID #57.) It agreed to plead guilty "to a dual-object conspiracy to defraud the United States and to violating the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 331, 353, violating anti-kickback laws, and using aggressive marketing tactics to convince doctors unnecessarily to dispense frivolous opioid prescriptions." (*Id.*, ¶ 146, PageID #57.) The plea agreement "does not identify Purdue's co-conspirators, and Publicis [is] not identified by name in the plea agreement." (*Id.*, ¶ 147, PageID #57.)

At bottom, Plaintiff alleges that Publicis Health created marketing plans and analyses and provided services that made it part of a criminal enterprise with Purdue Pharma that exerted influence over prescribers and payors to expand the availability and use of opioids. (*Id.*, ¶¶ 46, 106–07 & 110–14, PageID #16, #38–42.) In this regard,

the complaint alleges that, like Purdue Pharma, Publicis Health knew that the formulation of OxyContin on the market in the 2010s facilitated misuse, abuse, and a growing addiction crisis and, in the face of this knowledge, undertook an advertising campaign to brand the product falsely as safer for patients. (*See, e.g., id.*, ¶¶ 78–81, PageID #27–29.) Plaintiff contends that this work formed part of a broader scheme to increase opioid sales. (*Id.*, ¶ 139, PageID #54.) According to the complaint, Publicis Health targeted third-party payors, which reimbursed the cost of opioid prescriptions, as they marketed the drugs to prescribers. (*Id.*, ¶¶ 26, 91–92 & 110–14, PageID #11, #32–33 & #39–42.)

## STATEMENT OF THE CASE

On April 12, 2024, on behalf of itself and all others similarly situated, Plaintiff Cleveland Bakers and Teamsters Health and Welfare Fund sued Defendant Publicis Health in federal court. Plaintiff alleged violations of the Racketeer Influenced and Corrupt Organizations Act (Count 1) and the Ohio Corrupt Practices Act (Count 2) as well as unjust enrichment (Count 3) and common law absolute public nuisance (Count 4). Defendant moved to dismiss the complaint, arguing that Plaintiff did not have standing to assert its RICO or public nuisance claims, its public nuisance claim was moot, the RICO and unjust enrichment claims were time barred, and the complaint did not otherwise state a claim on which relief can be granted (ECF No. 19).

In 2018, Cleveland Bakers and Teamsters Health and Welfare Fund and a similar third-party payor, Pipe Fitters Local Union No. 120 Insurance Fund, sued a group of companies that marketed or distributed opioid products. *See In re National*

*Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 781–82 (N.D. Ohio 2020). In that case, the plaintiffs named among a number of "Marketing Defendants" each of the pharmaceutical companies that the present complaint identifies as opioid-related clients of Publicis Health. *Compare id.* at 782 n.2 *with* ECF No. 1, ¶ 149, PageID #58.

In the *National Prescription Opiate* litigation, the plaintiffs did not name Publicis Health as a defendant. In that litigation, the complaint brought claims under RICO as well as State-law claims for violation of the Ohio Corrupt Practices Act, public nuisance, negligence, fraud, injury through criminal acts, unjust enrichment, and civil conspiracy. *In re National Prescription Opiate Litig.*, 440 F. Supp. 3d at 782–83. The defendants moved to dismiss the complaint. *Id.* at 783. On February 21, 2020, the court largely denied the motion. *Id.* at 818. That multi-district litigation remains ongoing. *See* MDL No. 2804, Case No. 1:17-md-2804 (N.D. Ohio).

Following a jury trial in the MDL resulting in a verdict of $650 million against three national pharmacies, the defendants appealed, and the Sixth Circuit certified to the Ohio Supreme Court the question whether Ohio law abrogates a common-law claim of absolute public nuisance to remedy the harms resulting from the opioid epidemic. On December 10, 2024, the Ohio Supreme Court answered that question in the affirmative. *Trumbull Cnty. v. Purdue Pharma, L.P. (In re National Prescription Opiate Litig.)*, 2024-Ohio-5744. Specifically, the Ohio Supreme Court recognized that the Ohio legislature amended the Ohio Product Liability Act to expand the Act's abrogation of common-law causes of action to reach all public

5

nuisance claims arising from the sale of a product. *Id.* at ¶¶ 13 (quoting Ohio Rev. Code § 2307.71(A)(13)) & 15–16. With this answer, the Sixth Circuit reversed the district court's judgment. *Trumbull Cnty. v. Walgreens Boots All., Inc. (In re National Prescription Opiate Litig.)*, Nos. 22-3750, 22-3751, 22-3753, 22-3841, 22-3843, 22-3844, 2025 U.S. App. LEXIS 2316, at *15 (6th Cir. Jan. 31, 2025).

Based on the Ohio Supreme Court's ruling, the Court ordered supplemental briefing. In response, Plaintiff moved to dismiss its public nuisance claim in Count 4 with prejudice. (ECF No. 33.) Defendant consented to that motion. (*Id.*) Under Rule 21, "the court may at any time, on just terms . . . sever any claim against a party." In light of Plaintiff's representation that it no longer intends to pursue its claim for absolute public nuisance in the wake of the Ohio Supreme Court's answer to the certified question and the Sixth Circuit's reversal of the verdict *In re National Prescription Opiate Litigation*, the Court **GRANTS** Plaintiff's unopposed motion to dismiss Count 4 of its complaint (ECF No. 33). The Court proceeds to consider Defendant's motion to dismiss Plaintiff's remaining claims.

## ANALYSIS

On a motion under Rule 12(b)(6), a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

6

550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

When analyzing a complaint under this standard, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were "not well-pleaded[,]" "their conclusory nature 'disentitles them to the presumption of truth'"). Rule 8 "does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). To the extent either party asks the Court to consider information outside the pleadings, it declines to do so and takes no account of facts outside the complaint.

I.  **RICO and the Ohio Corrupt Practices Act**

Plaintiff brings claims against Defendant under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) & (d), as well as its State-law counterpart, the Ohio Corrupt Practices Act, Ohio Rev. Code § 2923.31, *et seq*. Because the Ohio Corrupt Practices Act is patterned after the federal RICO statute, courts look to federal law to interpret the Ohio statute. *DeNune v. Consolidated Cap. of N. Am., Inc.*, 288 F. Supp. 2d 844, 857 (N.D. Ohio 2003) (citing *U.S. Demolition & Contracting, Inc. v. O'Rourke Constr. Co.*, 94 Ohio App. 3d 75, 83, 640 N.E.2d 235 (1994)). Therefore, the Court analyzes these two counts together.

Plaintiff argues that Publicis Health committed mail and wire fraud when it misrepresented the characteristics of certain opioids, causing Plaintiff to incur costs associated with use and abuse of these drugs. Defendant argues that Plaintiff does not have standing to bring these claims, that the complaint fails to plead the elements of these claims, and that the claims are time barred in any case. The Court concludes

8

that Plaintiff fails to establish statutory standing or proximate causation and **DISMISSES** Count 1 and Count 2 on those grounds.

### I.A. Statutory Standing

Plaintiff brings its federal RICO claim under 18 U.S.C. § 1964(c), which allows a party to sue if it has been "injured in [its] business or property by reason of a [RICO] violation." In interpreting the phrase "by reason of," the Supreme Court holds that plaintiffs do not have standing to sue under RICO if their injuries are "merely derivative" of "misfortunes visited upon a third person by the defendant's acts." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613 (6th Cir. 2004) (quoting *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). In other words, "*indirect* purchasers who are two or more steps removed from the violator in a distribution chain may not sue." *Fenner v. General Motors, LLC*, 113 F.4th 585, 604 (6th Cir. 2024) (quoting *Apple, Inc. v. Pepper*, 587 U.S. 273, 279 (2019) (emphasis in original)).

This "bright-line rule" applies "with equal force in every individual case" and is not susceptible to challenges based on its rationales, including arguments that it functionally insulates a party from liability. *Id.* at 604 & n.6 (cleaned up). Accordingly, to survive dismissal, Plaintiff must distinguish its case from one in which "the plaintiffs had no relationship with the defendants except through intermediaries." *Trollinger*, 370 F.3d at 616.

In the MDL that Plaintiff previously brought against opioid manufacturers, it prevailed on this point by alleging that the defendants made direct misrepresentations to it. *In re National Prescription Opiate Litig.*, 440 F. Supp. 3d at 801–02. These direct misrepresentations included calls to Plaintiff's agents,

9

meetings with one agent, publications and presentations at conferences, and periodicals sent to Plaintiff's agents, all providing false and misleading information. *Id.* at 786. On the basis of these allegations, the court determined that Plaintiff brought a plausible claim that its injuries were the "direct result" of the defendants' "misrepresentations to [it] and [its] agents." *Id.* at 801.

By contrast, Plaintiff's complaint in this case does not identify any forms of communication from Publicis Health to Plaintiff or its agents. Rather, the complaint alleges communications between Publicis Health and those unaffiliated with Plaintiff, including Defendant's clients. (ECF No. 1, ¶¶ 26, 72–73, 85, 87, 103, 104, 106, 108, 110–13, 115, 119–21, 127–33, 135–37 & 172, PageID #11, #24, #30, #31, #37–44, #47–53 & #64–65.) Because the relationship between Plaintiff and Defendant exists only through these third-party intermediaries, the Court need not reach the question whether any of these communications constitute misrepresentations.

Plaintiff argues that it pleads direct misrepresentations. The complaint alleges "[o]n information and belief [that] Publicis directly communicated with [Plaintiff's agents] and delivered marketing information" and that these communications and misrepresentations were "calculated to reach Plaintiff." (ECF No. 1, ¶¶ 91–92, PageID #32–33.) But these statements do not identify any communications. They merely allege a "'belief' that such [communications] exist." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). Plaintiff does not contest that such allegations of belief, without more, are

10

"naked assertions devoid of further factual enhancement" that "contribute nothing to the sufficiency of the complaint." *Id.* (citing *Iqbal*, 556 U.S. at 678).

Instead, Plaintiff argues that its complaint makes other allegations not "upon information and belief." (ECF No. 29, PageID #542.) In support, it points to allegations that "Defendant's communications with [Plaintiff's agents] concerning Purdue's prescription opioids informed formulary decisions for [Plaintiff]," that "Defendant's communications and misrepresentations targeted Plaintiff through [its] agents," and that Defendant "deceived Plaintiff" through "concerted and deceptive efforts to obtain positive placement on . . . formularies." (ECF No. 1, ¶ 114, PageID #41; *see also id.*, ¶ 203, PageID #73 (alleging that Defendant "undertook active efforts to deceive Plaintiff").) These conclusory statements are a far cry from those in Plaintiff's prior complaint against pharmaceutical companies, which, while not providing a comprehensive list of dates and participants, identified modes and channels of direct communication—calls, meetings, presentations, and so forth. Here, the complaint contains only "labels and conclusions" regarding purported communications between Defendant and Plaintiff's agents. *See Twombly*, 550 U.S. at 555. Such pleadings are not enough "to raise a right to relief above the speculative level." *Id.*

### I.B. Proximate Cause

"RICO's civil-suit provision imposes two distinct but overlapping limitations on claimants—standing and proximate cause." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612 (6th Cir. 2004). These limitations overlap because "a plaintiff who lacks standing to vindicate a derivative injury also will be unable to show proximate cause."

11

*Id.* at 613. Therefore, the Court's conclusion that Plaintiff lacks standing necessarily implies that the complaint lacks proximate causation as well. But even if Plaintiff had standing under the statute to sue, "a RICO plaintiff who can show a direct injury may still lose the case if the injury does not satisfy other traditional requirements of proximate cause." *Id.* at 615. Accordingly, the Court next examines whether Plaintiff can show proximate causation if it had standing.

Causation under RICO demands more than common-law foreseeability. *Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022). To satisfy proximate causation under RICO, a plaintiff must demonstrate not only foreseeability but also "directness of relationship" between the defendant's alleged wrongdoing and the plaintiff's asserted injuries. *Holmes*, 503 U.S. at 269. In the absence of such directness, the Supreme Court has dismissed RICO cases brought by an organization of broker-dealers alleging that a defendant's stock-manipulation scheme caused its members' eventual liquidation and compelled it to advance reimbursements to its members' customers, *id.* at 270–74, by a retailer alleging that its competitor caused it economic harm by failing to collect State sales tax, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–58 (2006), and by a city alleging that an out-of-state retailer made it more difficult for the city to enforce its tax code by failing to comply with a federal law requiring submission of certain information to the State, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 4–6, 11 (2010). However, proximate causation under RICO does not necessarily require first-hand reliance on a defendant's misrepresentations. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657–61 (2008) (finding

directness satisfied where bidders at a county's tax lien auctions alleged that a competitor lied to the county about violating bidding rules).

As applied to third-party payors alleging that pharmaceutical companies misrepresented a drug's negative characteristics, the Circuits are divided regarding RICO causation. The Second and Seventh Circuits reject such cases, concluding that the decisions of independent actors like prescribing physicians interrupt the chain of direct causation. *See UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 134–35 (2d Cir. 2010); *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 873 F.3d 574, 578 (7th Cir. 2017); *see also Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 444 F. App'x 401, 409–10 (11th Cir. 2011). On the other hand, the First, Third, and Ninth Circuits have determined that such decisions do not constitute intervening causes that break the causal chain. *See In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 37–39 (1st Cir. 2013); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 643–46 (3d Cir. 2015); *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1257 (9th Cir. 2019). The Sixth Circuit has not yet ruled on this issue. *But see Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 849–51 (6th Cir. 2003) (dismissing for lack of proximate causation a RICO claim brought by insurance plan subscribers against tobacco companies under the theory that smoking-related illnesses increased insurance premiums).

Although *Perry* suggests that the Sixth Circuit will fall into the former camp, the Court need not decide between these competing lines of authority, assuming that

13

they apply at all to the facts and circumstances alleged. Unlike the cases from other Circuits—or any other third-party payor case on which Plaintiff relies to support causation—Defendant here is not a pharmaceutical company. It is a marketing firm hired by pharmaceutical companies against which Plaintiff brought a separate RICO action. *See In re National Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio). Even if the independent decisions of prescribing physicians only fray and do not cut the causal connection, the intervention of pharmaceutical companies snaps the cord. The complaint fails to plead any direct misrepresentation Publicis Health made to Plaintiff. Where the complaint's factual allegations are specific to Defendant, they are almost entirely limited to communications between Publicis Health and its pharmaceutical clients. Those pharmaceutical companies were free to consider or ignore that advice in whole or in part. Indeed, the complaint itself acknowledges that pharmaceutical companies did not implement all of the ideas that Publicis Health pitched to them. (*See* ECF No. 1, ¶ 88, PageID #32.)

Further, permitting a RICO claim under these circumstances invites the attributional uncertainty that *Holmes* sought to avoid. *See* 503 U.S. at 269. "[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Id.* The difficulty of attributing Plaintiff's damages to Defendant as opposed to its pharmaceutical clients, which are not parties to this case, underscores the attenuated relationship between Plaintiff and Defendant that bars these claims as a matter of law.

14

\* \* \*

In summary, Plaintiff's claims against this Defendant under RICO and the Ohio Corrupt Practices Act are "too remote, contingent, derivative, and indirect to survive." *Perry,* 324 F.3d at 849 (quoting *Service Emps. Intern. Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1076 (D.C. Cir. 2001)). They do not satisfy the requirements for statutory standing or proximate causation under RICO.

## II.    Unjust Enrichment

Plaintiff's remaining cause of action is a State-law claim for unjust enrichment based on the same facts. Federal district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). This grant of jurisdiction brings all claims arising from a common nucleus of operative fact before the Court. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016). Supplemental jurisdiction "is a doctrine of discretion." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). Because

comity to State courts is a substantial interest, there is "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011). The Court should retain jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [the] concern over needlessly deciding state law issues." *Id.* (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)). In exercising this discretion, the Court may consider the convenience to the parties and judicial economy in resolving the case. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000). Here, these factors present a rare case favoring the exercise of supplemental jurisdiction. The exercise of supplemental jurisdiction will significantly advance the interests of judicial economy, finality, and the convenience of the parties without compromising fairness or comity. Accordingly, the Court proceeds to consideration of Plaintiff's unjust enrichment claim.

In Ohio, unjust enrichment occurs where a plaintiff shows that: "(1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment." *Bunta v. Superior VacuPress, LLC*, 171 Ohio St. 3d 464, 2022-Ohio-4363, 218 N.E.3d 838, ¶ 36. "Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." *Wuliger v. Manufacturers*

*Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting *Beatley v. Beatley*, 160 Ohio App. 3d 600, 2005-Ohio-1846, ¶ 61, 828 N.E.2d 180 (2005)) (emphasis omitted). The purpose of the doctrine "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 21 (quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (Ohio 1954)).

In *Johnson*, an antitrust action under Ohio's Valentine Act, the Ohio Supreme Court addressed how the first element of unjust enrichment operates for an indirect purchaser, who may not bring an antitrust claim under federal or Ohio law. *See Johnson*, 2005-Ohio-4985, syllabus; *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746–47 (1977). In short, the Ohio Supreme Court held that "an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser." *Johnson*, 2005-Ohio-4985, at ¶ 22. Because the facts in *Johnson* "demonstrate[d] that no economic transaction occurred between [the parties]," the Ohio Supreme Court concluded that the plaintiff could not establish the retention of any benefit and affirmed the dismissal of the claim for unjust enrichment. *Id.* Therefore, to maintain its claim for unjust enrichment, Plaintiff, though a step removed from Publicis Health, must demonstrate how it conferred abenefit on Defendant.

17

According to the complaint, Plaintiff conferred benefits on Publicis Health by paying for what it describes as Defendant's externalities—"the costs of the harm caused by [its] negligent or otherwise unlawful distribution and sales practices." (ECF No. 1, ¶ 344, PageID #116.) Such allegations do not even describe losses and damages Plaintiff suffered. They might describe benefits Plaintiff conferred on third parties not involved in this case. But they do not establish that Plaintiff conferred a benefit on Publicis Health. *See Becker v. Cardinal Health, Inc.*, 2021-Ohio-3804, ¶ 21, 179 N.E.3d 769 (Ohio Ct. App. 2021). Any direct benefit Plaintiff might have conferred was on Defendant's clients, not on Publicis Health itself. Because the complaint does not allege that Defendant distributed or sold opioids, the complaint's allegations regarding its "distribution and sales practices" are misplaced. (*See* ECF No. 1, ¶ 344, PageID #116.)

Additionally, the complaint alleges that Defendant "is aware of these obvious benefits, and that retention of these benefits is unjust" because Defendant would not have received this enrichment but for its "deceptive marketing of prescription opioids" and its "conscious failure to exercise due diligence in preventing diversion" of the drugs. (*Id.*, ¶ 345–46, PageID #117.) Such an unadorned allegation that "the defendant wronged me" fails to meet the basic pleading requirements of Rule 8. *See Iqbal*, 556 U.S. at 678.

To argue otherwise, Plaintiff relies on *In re National Prescription Opiate Litigation*, 440 F. Supp. 3d at 817–18. Comparison to that case against opioid manufacturers and distributors underscores the deficiency of the claim here. In that

18

MDL, the court's sole rationale for distinguishing *Johnson* was the inapplicability of the indirect purchaser rule. *See* 440 F. Supp. 3d at 818; *see also* No. 1:17-md-2804, ECF No. 1203, PageID #29055–57.

But this reasoning overlooks the derivation of the "directness of relationship" test for proximate causation, which directly descends from the indirect purchaser rule for antitrust claims. *See Trollinger*, 370 F.3d at 613–14; *County of Oakland v. City of Detroit*, 866 F.2d 839, 847–51 (6th Cir. 1989). Indeed, in *County of Oakland*, the Sixth Circuit cited *Illinois Brick* extensively to explain the rule for a RICO claim. 866 F.2d at 848–50. The Sixth Circuit noted that, "[a]lthough [it] focused primarily on the antitrust laws" in its discussion, "most of what [it] said is applicable also to [18 U.S.C. § 1964(c)], a provision patterned directly on § 4 of the Clayton Act." *Id.* at 851. And the Ohio Supreme Court extended this rule for indirect purchases to claims for unjust enrichment. *Johnson*, 2005-Ohio-4985, at ¶ 22. Plaintiff offers no argument that its unjust enrichment claim survives this analysis.

In any event, *In re National Prescription Opiate Litigation* distinguished *Johnson* because the plaintiffs did not claim to be purchasers at all, indirect or otherwise, but instead based their theory of recovery on the externalities wrought by the defendants' improper distribution practices. *See* 440 F. Supp. 3d at 817–18; *see also* No. 1:17-md-2804, ECF No. 1203, PageID #29055–57. But this rationale, if it involves the conferral of a benefit at all, does not apply in this lawsuit. Unlike the complaint in *In re National Prescription Opiate Litigation*, Plaintiff here does not make allegations that connect distribution of opioids to Defendant, as opposed to its

19

clients. Plaintiff offers no limiting principle that would allow its claim to proceed as a matter of law against a company that provided marketing services but not against other service providers that advised Purdue Pharma or any other manufacturer or distributor of opioids.

## CONCLUSION

Without question, the opioid crisis has caused widespread devastation to individuals and their families, communities, and countless institutions across the country. To the extent Plaintiff has a colorable claim for the damages it claims, its remedy lies against other parties or must come from other actors in our political system.

For all the foregoing reasons, the Court **GRANTS** Plaintiff's unopposed motion to dismiss Count 4 of its complaint (ECF No. 33) and **GRANTS** Defendant's motion to dismiss (ECF No. 19).

**SO ORDERED.**

Dated: February 26, 2025

J. Philip Calabrese
United States District Judge
Northern District of Ohio